## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 22-154** |
| | : | |
| **DAJAVAN SPEAKS** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **March 28, 2024**

We revisit whether evolving analysis of the Second Amendment counsels we find the long-standing federal law precluding the possession of firearms by certain persons based on the past conduct is unconstitutional. We today address whether to vacate the conviction of a man earlier convicted of violating Pennsylvania gun possession laws and then pleading guilty before Judge Robreno to possessing a stolen unlicensed semi-automatic gun while avoiding police pursuit a month after his earlier conviction. He argues Congress's criminalizing his post-conviction possession of a gun is unconstitutional on its face and as applied to him because he needed to carry this gun (even when pursued by the police) as self-defense to generally protect himself on Philadelphia streets. We disagree. Nothing in our Nation's history authorizes arming persons earlier convicted of an illegal gun offense to carry a gun on the streets because they fear living in an allegedly dangerous city. A generalized fear of being randomly shot at some time and place for undefined reasons is not the type of self-defense historically recognized for allowing persons earlier convicted of illegally carrying guns in public to carry stolen semi-automatic guns.

The state court convicted Philadelphian Dajavan Speaks of illegally possessing a firearm in public in January 2022 with a possible sentence of up to five years. Philadelphia Police suspected Mr. Speaks and another person of offenses less than month later and pursued him

through the streets of Philadelphia by car and foot miles from his home while he carried a stolen 9mm semi-automatic pistol loaded with twenty live rounds of ammunition in an extended magazine. The police eventually caught and arrested him carrying the semi-automatic handgun. Our grand jury charged him with being a felon in possession of a firearm. He agreed to all the facts relating to his February 2022 conduct and pleaded guilty to being a felon in possession leading to Judge Robreno imposing a sentence of forty-months of incarceration.

He did not appeal his sentence. He instead now petitions for habeas relief seeking to vacate his federal conviction arguing he has a constitutional right to carry unlicensed handguns in a generalized type of self-defense in a city rife with gun violence. He argues the Supreme Court and our Court of Appeals in recent civil or declaratory judgment cases involving wildly distinct fact patterns direct we must now release him from Judge Robreno's sentence because criminalizing handgun possession by a man who pleaded guilty to an underlying firearms offense is unconstitutional given his general ever-present need for self-defense. We recognize Mr. Speaks may fear gunshots stemming in part from his experience as a victim of gun violence years ago but we decline to extend the Second Amendment right to generally authorize the arming of persons earlier convicted of gun crimes living in Philadelphia. Our Nation's historical traditions confirmed in Pennsylvania laws amply support the constitutionality of the federal law on its face and as applied to Mr. Speaks's sentence. We deny Mr. Speaks's Motion to vacate his sentence without prejudice to our study of the Supreme Court's review of distinct fact patterns in *United States v. Rahimi* and *Garland v. Range*.

## I.     Underlying offenses leading to conviction.

Someone shot Philadelphian Dajavan Speaks and killed his friend while standing outside of a convenience store across the street from where he lived in December 2018.[1] Mr. Speaks then illegally obtained a gun to protect himself.[2]

### *Mr. Speaks pleads guilty to carrying a firearm in public in January 2022.*

Police arrested Mr. Speaks for carrying a firearm in public in Philadelphia in October 2019. The Commonwealth charged Mr. Speaks with violating sections 6106 and 6108 of Title 18 of the Pennsylvania Consolidated Statutes. Section 6106 is a third-degree felony punishable by up to seven years imprisonment which prohibits a person from carrying a gun in a vehicle or on his person, except in his home or place of business, without a valid and lawfully issued license.[3] Section 6108 is a misdemeanor punishable by up to five years imprisonment which prohibits carrying a gun in public in Philadelphia without a license.[4] Judge Frazier-Lyde of the Philadelphia Court of Common Pleas placed Mr. Speaks on house arrest awaiting trial.[5] Mr. Speaks remained on house arrest for over two years until he pleaded guilty to carrying a firearm in public under section 6108 on January 26, 2022.[6] The Commonwealth dismissed the section 6106 charge. Judge Hall did not impose a post-conviction custodial sentence but instead accepted his guilty plea without further penalty.[7] Mr. Speaks's state court conviction precluded him from carrying a firearm consistent with Congress's prohibition in section 922(g) of firearm possession by a person earlier convicted in any court of a crime punishable by imprisonment for a term exceeding one year.[8]

### *Police arrest Mr. Speaks less than a month later with a stolen semi-automatic handgun.*

Two Philadelphia Police Department Officers attempted to stop a silver Hyundai Elantra on the 2000 block of Erie Avenue in Philadelphia on February 24, 2022 during normal patrols.[9]

They observed two men in black bubble jackets wearing black ski masks inside the Hyundai. The two men fled in the Hyundai car at a high speed and the officers tried to stop them.[10] The officers pursued the car at high speeds for many blocks before pulling onto a street where they observed the abandoned Hyundai Elantra and Mr. Speaks walking away from the car in a black jacket and a black ski mask.[11]

A second police car arrived.[12] Officers pursued Mr. Speaks on foot. Mr. Speaks grabbed his waistband holding onto his firearm as he ran.[13] Mr. Speaks ignored the officers' commands to stop.[14] Mr. Speaks collided with an Officer who attempted to apprehend him resulting in a gash on the Officer's face.[15] Officers tackled Mr. Speaks and recovered a stolen 9mm semi-automatic pistol loaded with twenty live rounds of ammunition in an extended magazine from Mr. Speaks's waistband.[16] Officers arrested Mr. Speaks for unlawful possession of a firearm based on his earlier conviction and because he did not have a valid permit to carry the gun.[17]

### Grand jury charges Mr. Speaks with felon in possession.

Our grand jury charged Mr. Speaks as felon in possession of a firearm based on the recovery of the stolen gun on February 24, 2022 by the Philadelphia Police.[18] The Honorable Eduardo C. Robreno appointed Attorney Steve A. Jarmon from the Criminal Justice Act Panel to represent Mr. Speaks on June 16, 2022.[19]

### Mr. Speaks pleads guilty in this Court to being illegally possessing a firearm.

Mr. Speaks pleaded guilty to one count of illegally possessing a firearm on August 16, 2022.[20] Mr. Speaks waived his right to appeal or collaterally attack his conviction and sentence, for example through a habeas petition, expressly waiving an argument (1) the statute to which he pleaded guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of

the statute.[21] He retained his right to file a claim of constitutionally ineffective assistance of counsel.[22]

Mr. Speaks confirmed his satisfaction with legal representation provided by counsel, he and his counsel "fully discussed" the plea agreement, and he agreed to plead guilty because he admits his guilt.[23] He swore he knew of his right to proceed to trial.[24] The United States and Mr. Speaks swore to Mr. Speaks's competence to enter the plea.[25] Mr. Speaks swore he understood the charges against him.[26] Mr. Speaks specifically admitted to fleeing from Officers, colliding with an Officer resulting in a gash on the Officer's face, possessing a stolen gun without a license to carry, and his knowledge a state judge could have sentenced him to more than one year in prison for his earlier state court conviction.[27] Mr. Speaks never claimed during his plea he possessed the gun based on a generalized fear of walking the Philadelphia streets without a gun.

### Judge Robreno sentences Mr. Speaks.

Mr. Speaks appeared for sentencing before Judge Robreno on November 29, 2022.[28] Attorney Jarmon asked for a downward departure arguing Mr. Speaks possessed a gun to protect himself after an unidentified person shot him in the buttocks and killed his best friend outside of a convenience store in December 2018.[29] Judge Robreno asked Attorney Jarmon whether he believed there is a "legally recognized defense" to a felon in possession charge because a defendant possessed the gun to protect himself, to which Attorney Jarmon responded, "No."[30] Judge Robreno observed, "There is no fear of being killed exception to a felon in possession."[31] Attorney Jarmon responded, "I'm not arguing a defense, Your Honor. He pled guilty. I'm arguing for a downward departure."[32] Judge Robreno denied Attorney Jarmon's request for a downward departure.[33]

Judge Robreno sentenced Mr. Speaks to a term of forty months of imprisonment, three years of supervised release, and $100 special assessment.[34] Mr. Speaks did not appeal his conviction or sentence.

### *Mr. Speaks pro se moved for habeas relief.*

Mr. Speaks *pro se* petitioned for habeas relief alleging his felon-in-possession conviction is unconstitutional and his counsel ineffective for failing to challenge the constitutionality of the felon-in-possession statute (section 922(g)(1)) as applied to him because of our Court of Appeals then considering *Range v. Attorney General* on appeal.[35] Mr. Speaks cited to our Supreme Court's decision in *Garza v. Idaho*, where the petitioner argued his counsel ineffective for failing to file a notice of appeal.[36] The United States opposed Mr. Speaks's habeas petition, arguing (1) his guilty plea agreement bars his present claim, and (2) even if considered, his claim is baseless because the Court of Appeals's much later and narrow decision in *Range* v. *Attorney General* does not apply to Mr. Speaks's conviction.[37]

We noted Mr. Speaks's limited explanation of his claim and the United States not addressing the *Garza* case cited by Mr. Speaks. We granted the United States and Mr. Speaks leave to fully brief these issues.[38] The United States responded, acknowledging we need to evaluate witness testimony in an evidentiary hearing because Mr. Speaks argued his attorney failed to follow a request to file an appeal.[39] We appointed the Federal Defenders to represent Mr. Speaks and set a time for an evidentiary hearing.[40]

Mr. Speaks filed a counseled Reply.[41] His Federal Defender attached a supporting Declaration from Attorney Jarmon clarifying the ineffective assistance of counsel claim is not based on whether he acted in accord with Mr. Speaks's instruction—a fact issue—but is instead focused on questions of law regarding the constitutionality of Mr. Speaks's conviction.[42] We

adjourned the evidentiary hearing upon the parties' consent and scheduled oral argument on the legal issues.[43] The parties filed a joint Notice in which the United States explained it waives (1) claims Mr. Speaks defaulted on his Second and Fifth Amendment claims, and (2) the language in the plea agreement stating Mr. Speaks waives his right to raise on appeal any challenge to the constitutionality of the statute to which he pleaded guilty.[44] The United States withdrew an objection to us reaching the merits of Mr. Speaks's claims.[45] The United States then argued Mr. Speaks's challenge to section 922(g)(1) as unconstitutional fails on the merits and plea counsel cannot be ineffective for failing to raise a meritless claim.[46]

We held extensive oral argument.[47] Mr. Speaks's counsel argued anyone in the country who has a fear of being shot has a Second Amendment right to carry a weapon regardless of their felon status under the Supreme Court's declaratory judgment decision in *Bruen*.[48] Mr. Speaks's counsel clarified his two arguments: (1) section 922(g)(1) is facially unconstitutional because it criminalizes the right to possess a firearm in self-defense which is protected under the Second Amendment in *Bruen* and there is no historical analogue to support disarmament under these circumstances, and (2) section 922(g)(1) is unconstitutional as applied to Mr. Speaks because he possessed a gun in self-defense at the time of flight from police and eventual arrest.[49] Mr. Speaks's counsel explained he is asking us to find as a matter of *fact* based on the record—not as a matter of constitutionality—Mr. Speaks had a valid self-defense belief.[50] The United States relied on a number of our colleagues' decisions finding section 922(g)(1) constitutional as applied to individuals with earlier state court convictions for unlawful firearm possession. Mr. Speaks's counsel argued Mr. Speaks compares favorably to the defendants in some of our colleagues' cases involving underlying convictions for robbery, attempted murder, aggravated assault, strangulation,

and terroristic threats.[51] When asked whether these cases involve constitutional applications of the felon-in-possession statute, Mr. Speaks's counsel responded, "That's correct."[52]

We granted the parties leave to file post-hearing briefing to address (1) the constitutionality of section 922(g)(1) as applied to persons with the same underlying conviction as Mr. Speaks under 18 PA. CONS. STAT. § 6108 (and similar analogue 18 PA. CONS. STAT. § 6106), and (2) whether a defendant pleading guilty to being illegally possessing a firearm may later raise a generalized self-defense in a habeas petition as a grounds to possess a firearm several years after his suffered injury from gunshots in Philadelphia and then argue the prohibition at section 922(g)(1) is unconstitutional as applied to him.[53] The parties filed supplemental briefing to address these two remaining issues.[54]

## II.    Analysis

Congress allows a person convicted in federal court to file a habeas petition moving to vacate, set aside, or correct his sentence in four circumstances: (1) the sentence imposed violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence is in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[55] We may only vacate a sentence if we find "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[56]

A federal habeas petition "is reviewed much less favorably than a direct appeal of the sentence" and available only when "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and ... present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent."[57] Collateral review "is not a

substitute for direct review" and a petitioner "ordinarily may only raise claims in a [habeas] motion that he raised on direct review."[58] Claims raised in a habeas motion not raised on direct appeal are procedurally defaulted unless the petitioner can "prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default" such as ineffective assistance of counsel.[59]

Mr. Speaks *pro se* petitioned for habeas relief arguing the section 922(g)(1) charge is unconstitutional both on its face and as applied to him following the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen* and our Court of Appeals's en banc decision in *Range v. Attorney General*.[60] The Supreme Court decided *Bruen* on June 23, 2022, approximately two months before Mr. Speaks's plea hearing and approximately five months before sentencing. Our Court of Appeals decided *Range* on June 6, 2023, over six months after Mr. Speaks's sentencing. Our Court of Appeals in *Range* addressed an as-applied, rather than a facial, constitutional challenge. "A facial challenge requires a showing that § 922(g)(1) is unconstitutional in *all* of its applications," whereas an as-applied challenge requires showing the statute is unconstitutional as applied to a particular defendant.[61]

Mr. Speaks seemingly makes both a facial and an as-applied challenge to the constitutionality of section 922(g)(1). He also argues his plea counsel was ineffective for failing to challenge the constitutionality of his conviction on appeal.[62] The United States opposes Mr. Speaks's motion. We deny Mr. Speaks's motion to vacate his sentence subject to a change in the law if presented by the Supreme Court's review in *United States v. Rahimi* and its disposition of *Garland v. Range*.[63]

**A. Section 922(g)(1) is constitutional as applied to Mr. Speaks's conviction.**

The Supreme Court in *Bruen* and our Court of Appeals in *Range* direct us to ask two questions when evaluating constitutional challenges to a convicted person possessing a firearm under the Second Amendment: (1) does the Second Amendment cover Mr. Speaks and his conduct; and (2) does the United States demonstrate its firearms regulation at section 922(g)(1) is consistent with the Second Amendment's text and historical understanding.[64] We find section 922(g)(1) is constitutional as applied to Mr. Speaks because the United States has shown the Nation's historical tradition of firearm regulation supports depriving Mr. Speaks of his Second Amendment right to possess a firearm following his earlier state court conviction for illegally possessing a firearm in public spaces.

Our Framers through the Second Amendment provide: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[65] Our Supreme Court almost sixteen years ago in *District of Columbia v. Heller* held the Second Amendment guarantees an individual right to keep and bear arms in self-defense unconnected with militia service.[66] The Court reasoned the Second Amendment protects hunting and militia service as well, but identified the "core" of the Second Amendment right as the right to self-defense.[67] Our Supreme Court later held the Second Amendment is "fully applicable to the States" through the Fourteenth Amendment.[68] But this right is not "unlimited."[69] The Court in *Heller* and *McDonald* took care to confirm laws barring people convicted of felonies from possessing firearms are consistent with the Second Amendment.[70]

Following our Supreme Court's decisions in *Heller* and *McDonald*, the courts of appeals applied a two-part test to determine the constitutionality of firearms laws under the Second Amendment: (1) analyze whether a challenged law burdens conduct which falls within the scope

of the Second Amendment based on its text and history, and (2) apply means-end scrutiny to determine whether the state's interest in the regulation is sufficient to overcome whatever burden the law places on an individual's Second Amendment right.[71]

But a portion of this analysis changed in early 2022 before Judge Robreno sentenced Mr. Speaks when the Supreme Court issued its decision in *Bruen* addressing a constitutional challenge to a New York law requiring persons seeking a license to carry a gun outside of the home show "proper cause."[72] Brandon Koch and Robert Nash sued New York state officials overseeing the licensing process for declaratory and injunctive relief alleging violations of their Second and Fourteenth Amendment Rights after state officials denied them licenses for failure to show "proper cause."[73] The Court rejected the means-end analysis used by courts of appeals after *Heller* and *McDonald* and established a new history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment. Our Supreme Court explained "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[74]

The Court applied its new framework to Mr. Koch and Mr. Nash and found they satisfied their burdens to show the Second Amendment protects their conduct because they are "ordinary, law-abiding, adult citizens," "part of 'the people' whom the Second Amendment protects," and they wish to carry handguns which are "weapons 'in common use' today for self-defense."[75] The United States had the burden of rebutting this presumption by demonstrating the challenged law "is consistent with the Nation's historical tradition of firearm regulation."[76] The Court provided guidance on how we should assess whether a firearm restriction is consistent with our Nation's

history, explaining we must look at "how and why the regulations burden a law-abiding citizen's right to armed self-defense."[77] For laws addressing "a general societal problem that has persisted since the 18th century," the United States must offer a "distinctly similar historical regulation addressing that problem."[78] "But 'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one."[79] Our Supreme Court found the United States did not sustain its burden to overcome the presumption because there was no eighteenth or nineteenth-century tradition of conditioning the right to carry a firearm in public on a state official's assessment of special need or justification. The Supreme Court held New York's law violated the Second Amendment.

The Court in *Bruen* evaluated a municipal regulation challenged on a declaratory judgment in the civil docket.  Judge Robreno sentenced Mr. Speaks a couple months after *Range* and no one suggested the *Bruen* guidance would change the analysis of the nature of Mr. Speaks's state court conviction. But another person deprived of a firearm based on a food stamp fraud appealed to our Court of Appeals in a civil suit while Judge Robreno reviewed Mr. Speaks's and Attorney Jarmon's arguments. Mr. Range pleaded guilty in 1995 to making false statements to obtain food stamps, a misdemeanor punishable by up to five years' imprisonment under Pennsylvania law.[80] Mr. Range tried to buy firearms for hunting and self-defense but was barred because of his conviction. He sued the Attorney General and Director of Alcohol, Tobacco, Firearms, and Explosives agency arguing section 922(g)(1) violates the Second Amendment as applied to him. Unlike Mr. Speaks, who pleaded guilty to the crime of unlawful gun possession, Mr. Range sued after state officials denied his attempts to purchase a gun based on Pennsylvania's background check system.[81]

Our Court of Appeals issued its en banc decision in *Range* several months after Judge Robreno sentenced Mr. Speaks. Applying *Bruen*, our Court of Appeals found Mr. Range is one of

"the people" with Second Amendment rights.[82] Our Court of Appeals rejected the United States's contention the Second Amendment applies only to "law-abiding, responsible citizens," finding "the people" "unambiguously refers to all members of the political community, not an unspecified subset."[83] Our Court of Appeals explained "'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'"[84] The Court of Appeals also found the Second Amendment regulated Mr. Range's conduct because he requested a rifle to hunt and a shotgun for self-defense in the home—conduct which "tracks the constitutional right as defined by *Heller*."[85]

After finding Mr. Range satisfied his burden to show the Second Amendment protected him and his conduct, our Court of Appeals considered whether the United States could constitutionally strip him of his Second Amendment right to bear arms by showing permanent disarmament under section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[86] Our Court of Appeals found the United States could not satisfy its burden in part because the historical law prohibiting convicted felons from possessing firearms applied only to violent criminals and the state court had not convicted Mr. Range of a violent crime.[87] Our Court of Appeals emphasized its decision was "narrow" and limited to the constitutionality of the statute as applied to Mr. Range's unique circumstances because there is no history of "depriving people like [Mr.] Range of their firearms."[88] We are mindful of Judge Ambro's concurrence in *Range* to "explain why the Government's failure to carry its burden in this case does not spell doom for § 922(g)(1)."[89] Judge Ambro explained the reason why section 922(g)(1) remains "presumptively lawful" is "because it fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society. That [Mr.] Range does not conceivably pose such a threat says nothing about those who do. And I join the

majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like."[90]

Our Court of Appeals's analysis in *Range* involved an as-applied, rather than a facial, constitutional challenge. Mr. Speaks relies primarily on the *Range* decision in support of his argument section 922(g)(1) is unconstitutional as applied to him. The United States argues *Range* is wrongly decided, or alternatively, distinguishable from Mr. Speaks's convictions. We are bound by the *Range* decision to the extent it applies to today's facts absent controlling decisions to the contrary and consider only the United States' argument *Range* is distinguishable from the facts of this case.

We agree the facts in *Range* are readily distinguishable. We are facing a much different state crime than presented by Mr. Range's food stamp conduct. We find section 922(g)(1) is constitutional as applied to Mr. Speaks because, unlike in *Range*, the United States here carried its burden of showing the statute is "consistent with the Nation's historical tradition of firearm regulation."[91]

We apply the two-prong test established by our Supreme Court in *Bruen* and applied by our Court of Appeals in *Range*. There is no dispute Mr. Speaks is one of "the people" protected by the Second Amendment as the United States concedes.[92] "The next question is whether Section 922(g)(1) regulates Second Amendment conduct."[93] The United States argues the Second Amendment does not cover Mr. Speaks's conduct here because: (1) Mr. Speaks has not shown he possessed the firearm for a lawful purpose; and (2) Mr. Speaks's firearm was stolen. Mr. Speaks argues he need not prove self-defense to obtain relief because several judges have found possession of a firearm alone triggers the Second Amendment analysis.[94] We join a majority of our colleagues in finding we need not address whether the Second Amendment covers Mr. Speaks's conduct

14

because even if it does, the United States has met its burden of showing section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[95]

But Mr. Speaks is trying a new tactic before us. He claims a constitutional right to always carry a firearm in Philadelphia because of his fear of being shot in Philadelphia. He claims he acted with a lawful purpose of self-defense in carrying the stolen firearm when the police apprehended him after he fled from them on February 24, 2022. He is essentially attacking the fact basis for his plea. "[A] habeas petitioner's claim that there was an insufficient factual basis for a guilty plea is not cognizable on habeas review."[96] Although the United States waived arguments Mr. Speaks waived his right to challenge the constitutionality of section 922(g)(1) on appeal, the United States did not waive arguments related to the factual basis for Mr. Speaks's plea. At the plea hearing, Mr. Speaks admitted to possessing a stolen gun without a license to carry and conceded he knew a state court judge could punish him with more than one year in prison arising from his earlier state court conviction.[97] Mr. Speaks never argued to Judge Robreno at the plea hearing he possessed the gun based on self-defense or a generalized fear of walking the Philadelphia streets without a gun. Mr. Speaks swore he understood the charges against him at his plea hearing.[98] He swore he knew of his right to proceed to trial.[99] He agreed to plead guilty because he admitted his guilt.[100]

Mr. Speaks now asks us years later to find he had a legal defense to a statute to which he competently pleaded guilty, relying on a Supreme Court decision finding unconstitutional a New York law requiring those seeking a license to carry a gun outside of the home show "proper cause." But nothing in the Court's *Bruen* decision—a civil suit brought by persons prospectively seeking to buy guns for hunting and self-defense—suggests someone already convicted of violating a firearms law and deemed by Congress to be dangerous has a right to carry a stolen semi-automatic pistol a month after his conviction based on a shooting which occurred years earlier and in a

15

different neighborhood with no demonstrated threat of harm to him other avoiding arrest after flight. Judge Robreno and Mr. Speaks's plea counsel agreed at sentencing there existed no self-defense argument because nothing in the *Bruen* decision supported such an argument. No one could have predicted our Court of Appeals's decision relating to an earlier food stamp fraud conviction in *Range* decision still several months away. Relief is only available where the claimed error of law is a "fundamental defect" resulting in a "complete miscarriage of justice."[101] Mr. Speaks cannot show his section 922(g)(1) conviction is a "complete miscarriage of justice."

The United States argues "[t]here is clear historical support for restricting the possession of firearms by persons who, like the defendant, previously committed dangerous felonies."[102] The United States cites to early colonial and state laws disarming individuals deemed dangerous or disloyal to the United States and shows how this practice has persisted across our Nation's history.[103] The United States also relies on extensive authority from our colleagues upholding as-applied constitutional challenges to section 922(g)(1) convictions. We acknowledge the weight of authority in support of the United States's position.[104] We find particularly persuasive the decisions of our colleagues finding section 922(g)(1) constitutional as applied to persons whose earlier convictions involve unlawful possession of a firearm under 18 PA. CONS. STAT. §§ 6106 and 6108.

For example, Chief Judge Goldberg a few months ago in *United States v. Allen* held section 922(g)(1) constitutional on its face and as applied to a defendant with an earlier conviction for possessing a firearm in a car without a concealed-carry permit under section 6106 and receiving stolen property under section 3925 of Title 18 of the Pennsylvania Consolidated Statutes.[105] The United States provided Chief Judge Goldberg with historical examples of laws removing guns from people determined to be dangerous on an individual basis. Chief Judge Goldberg analyzed

whether these laws provide sufficient historical analogues to section 922(g)(1), a statute which applies equally to all felons without individual determinations of dangerousness.[106]

Chief Judge Goldberg followed our Court of Appeals's instruction in *Range* and *Bruen* and considered "how and why the regulations burden a law-abiding citizen's right to armed self-defense" when determining whether these laws are proper historical analogues.[107] He reasoned the Pennsylvania General Assembly determined people who carry guns without licenses pose a danger to the public by enacting section 6106.[108] Chief Judge Goldberg reasoned, "Because both § 922(g)(1), as applied to Allen, and the historic analogs cited above are concerned with preventing dangerous people from possessing firearms, the regulations burden a law-abiding citizen's right for the same reason."[109] He recognized the historical analogues differ in "how" they burden the Second Amendment right because they required case-by-case determinations of dangerousness whereas section 922(g)(1) makes a class-wide determination of dangerousness but Chief Judge Goldberg did "not find this distinction to be so different as to make it non-analogous to historic practice."[110] Chief Judge Goldberg concluded his as-applied analysis by explaining Mr. Allen is not like Mr. Range because Mr. Allen's underlying offense indicates dangerousness.[111]

Mr. Speaks argues section 6106 and section 6108 are "materially different" statutes because section 6106 is a third-degree felony punishable by up to seven years' imprisonment while Mr. Speaks's underlying conviction under section 6108 is a misdemeanor punishable by up to five years' imprisonment.[112] Under *Range*, we look to whether the underlying statute is aimed at preventing dangerous people from possessing guns, not at the length of the potential sentence or whether a crime is formally classified as a misdemeanor or a felony, when determining whether disarmament is proper under the Second Amendment. Congress determined people with convictions for crimes punishable by up to more than one year—a category of crimes which

includes section 6106 and 6018—cannot lawfully carry a firearm. Mr. Speaks argues the fact he spent less than one month in jail for a crime punishable by up to five years "speaks volumes" about Mr. Speaks's lack of dangerousness.[113] We disagree. We note although Mr. Speaks did not spend significant time in jail, he spent over *two years* on house arrest before pleading guilty to carrying a firearm in public.  But we do not measure dangerousness based on the amount of time Mr. Speaks served for his conviction. Mr. Speaks offers no authority to support such a conclusion. We rely instead on Mr. Speaks's underlying conviction which shows he cannot be trusted to follow firearms regulations.

The Pennsylvania General Assembly, in sections 6106 and 6108 of Title 18 of Pennsylvania Consolidated Statutes, targets similar crimes concerning unlawful possession and carrying of firearms.[114] Section 6106 prohibits carrying a gun in a vehicle or on his person, except in his home or place of business, without a valid and lawfully issued license.[115] Section 6108 prohibits carrying a gun in public in Philadelphia without a license.[116] Our colleagues who have addressed the constitutionality of section 922(g)(1) as applied to defendants with predicate offenses under sections 6106 or 6108 have unanimously concluded these firearms convictions are different from Mr. Range's food stamp fraud conviction because firearms convictions indicate a defendant poses a potential danger to society.[117]

Mr. Speaks argues section 6108, like the New York law at issue in *Bruen*, is a licensing statute and is subject to a post-*Bruen* constitutional challenge. But the statute in *Bruen* involved a prospective consideration of who can have a license to carry a firearm in public, whereas section 6108 involves a criminal prohibition on carrying a firearm without a license in Philadelphia. Mr. Speaks also ignores the fact the *Bruen* decision involved a civil suit brought by persons prospectively seeking to buy guns for hunting and self-defense, whereas his argument is someone

already convicted of a violation of a firearms law and deemed by Congress to be dangerous has a right to carry a stolen semi-automatic pistol.

By way of further example, Judge Pappert addressed Amir Johnson's motion to dismiss a one-count Indictment charging him with a violation of section 922(g)(1) arguing the statute is unconstitutional on its face and as applied to him.[118] Mr. John's felon-in-possession conviction was based on his earlier convictions for receiving stolen property, carrying a firearm without a license in violation of section 6106, and carrying a firearm in Philadelphia in violation of section 6108.[119] Judge Pappert  concluded Mr. Johnson is one of "the people" protected by the Second Amendment. He then considered whether the United States carried its burden of presenting historical analogues in support of regulating Mr. Johnson's conduct. Relying on *Range*, Judge Pappert cited to firearm regulations during the era of the Second Amendment's ratification disarming dangerous individuals.[120] Judge Pappert explained Pennsylvania and Massachusetts disarmed British loyalists who refused to swear allegiance to the state or the United States during the American Revolution in order to prevent violent protests.[121] Judge Pappert reasoned "[t]he understanding that dangerous individuals could be disarmed persisted after ratification" with nineteenth-century laws restricting firearms for individuals who were "reasonably accused of intending to injure another or breach the peace."[122] Judge Pappert found the United States carried its burden because the historical analogues support disarming people like Mr. Johnson who have earlier convictions for unlawfully carrying firearms and receiving stolen property which confirm, unlike Mr. Range's food stamp fraud, "he presents a potential danger to society and cannot be trusted to obey firearm regulations."[123]

A state court convicted Mr. Speaks, like Mr. Johnson, of carrying a firearm in Philadelphia in violation of section 6108. In enacting section 6108, the Pennsylvania General Assembly

determined people who carry guns without a license in Philadelphia pose a danger to the public. Our Nation has a history of disarming dangerous individuals since around the time of the Second Amendment's ratification and persisting into the nineteenth century. The analogous laws need not be "historical twin[s].'"[124] The United States carries its burden here, as it did before Chief Judge Goldberg and Judge Pappert in *Allen* and *Johnson*, of demonstrating section 922(g)(1) as applied to Mr. Speaks is consistent with our Nation's history of firearm regulation. Mr. Speaks is not like Mr. Range because his earlier firearm conviction demonstrates he cannot be trusted to obey firearm regulations.

Mr. Speaks argues a proper historical analogue is the 1689 English Bill of Rights, codified during William III and Mary II's reign, which guaranteed Protestants could "have arms for their defence suitable to their Conditions and as allowed by Law."[125] As our Supreme Court explained in *Heller* and the court of appeals explained in *Rahimi*, the English Bill of Rights was an attempt to curtail predecessors Charles II and James II's practice of using the military to disarm political opponents.[126] No such concern exists here. Congress expressly prohibits Mr. Speaks's possession by law. While our Supreme Court has relied on the English Bill of Rights in support of its holdings in *Heller* and *Bruen* defining the scope of the Second Amendment right to include possession unconnected with service in the militia and self-defense, we cannot find it cuts against a well-established ban on felons possessing firearms.

Mr. Speaks's counsel argues persons convicted of gun offenses living in Philadelphia who fear for their lives have the right to carry a gun in self-defense.[127] He offers piecemeal carefully-selected words from *Bruen* and *Range* in support of his position—arguing *Bruen* protects an individual's right to carry a handgun for self-defense outside the home and *Range* allows us to find section 922(g)(1) unconstitutional as applied to Mr. Speaks after-the-fact. We are not persuaded

our Supreme Court's jurisprudence can be melded in this way. Counsel could not offer case law where a judge found an exception to a section 922(g)(1) conviction based on self-defense, let alone as applied to someone claiming self-defense over three years after a shooting and miles away from where it happened. The Second Amendment has never extended this far.

**B.  Section 922(g)(1) is constitutional on its face.**

Mr. Speaks argues section 922(g)(1) is unconstitutional because (1) there is no founding-era history of broadly and permanently disarming felons, or alternatively, (2) the statute is void for vagueness because it "fails to give ordinary people fair warning of what conduct is subject to punishment."[128] The United States relies on the same historical analogues in support of its position Section 922(g)(1) is constitutional on its face. We find section 922(g)(1) is constitutional on its face.

"A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'"[129] Our finding section 922(g)(1) is constitutional as applied to Mr. Speaks forecloses any facial challenge to the statute because Mr. Speaks cannot show section 922(g)(1) is unconstitutional in *all* circumstances if there is at least one circumstance (his own) in which the statute is constitutionally applied.[130] Mr. Speaks's counsel conceded as much during oral argument when he argued Mr. Speaks compared favorably to defendants in other cases with underlying convictions for attempted murder, aggravated assault, strangulation, and terroristic threats. When asked directly whether these other cases involved constitutional applications of the felon in possession statute, Mr. Speaks's counsel responded, "That's correct."[131]

Every judge in our District to consider this facial question has found banning firearms for people previously convicted of certain crimes is constitutional. As Judge Savage noted, "We

cannot improve or add to their thoughtful and well-reasoned opinions. Therefore, we join them in holding that [section] 922(g) does not violate the Second Amendment."[132]

Our conclusion is further supported by our Supreme Court's decisions in *Heller* and *Bruen*. The Supreme Court in *Heller* explained "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," all "presumptively lawful regulatory measures."[133] And "[a]lthough, the majority opinion in *Bruen* did not address the constitutionality of § 922(g)(1) … six Justices through concurring and dissenting opinions, suggested that *Bruen* did not call into question the constitutionality of that statute."[134]

We turn next to Mr. Speaks's argument section 922(g)(1) is unconstitutionally vague—a different type of facial challenge. Mr. Speaks argues section 922(g)(1) "criminalizes a great deal of conduct that is constitutionally protected, but without notice of where to draw the constitutional line."[135] The United States does not address this argument in its briefing.

 "A criminal statute is impermissibly vague only if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"[136] Section 922(g)(1) is not unconstitutionally vague because it "provides explicit notice that it bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison."[137]

We are guided by Judge Rufe's reasoning in *United States v. Miller*, where Mr. Miller challenged section 922(g)(1) as unconstitutionally vague considering *Range*.[138] Mr. Miller argued there is no way for ordinary people with a past criminal conviction to know whether possessing a

gun will expose them to criminal punishment. Judge Rufe reasoned the statute clearly prohibits those convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm and the fact "the Second Amendment might then constitutionally preclude punishment in certain instances should not lead [the Court] to conclude otherwise."[139] Judge Rufe reasoned judges must consider vagueness challenges as applied to the facts of a particular defendant's case, and "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."[140] Judge Rufe already found the statute constitutional as applied to Mr. Miller, so she reasoned he cannot argue vagueness as applied to other defendants. The fact there may be close cases does not necessarily mean the statute is unconstitutionally vague.[141]

We similarly find section 922(g)(1) constitutional as applied to Mr. Speaks because he engaged in conduct which is clearly proscribed under the statute. He cannot argue vagueness as applied to the conduct of others.  Section 922(g)(1) is not impermissibly vague.

**C. Mr. Speaks cannot show his plea counsel's failure to advise he had a viable Second Amendment defense is deficient and the performance prejudiced his defense.**

We now consider whether Mr. Speaks establishes Attorney Jarmon provided ineffective assistance of counsel claim by failing to advise Mr. Speaks or Judge Robreno Mr. Speaks had a viable Second Amendment defense to the charges brought.[142]

We apply the two-part test of *Strickland v. Washington* when evaluating ineffective assistance of counsel claims in violation of the Sixth Amendment. We presume counsel is effective unless Ms. Speaks shows "counsel's representation fell below an objective standard of reasonableness," causing "prejudice."[143] We apply a "'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of

23

hindsight."[144] To show prejudice, a petitioner must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[145] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[146]

"It is well established that when a claim predicating an ineffective assistance of counsel claim is meritless, the ineffective assistance of counsel claim is also meritless."[147] We find Mr. Speaks's underlying Second Amendment claim is meritless. Plea counsel Attorney Jarmon could not have been ineffective for failing to raise a meritless claim. This type of challenge would have been entirely novel; no one knew of or mentioned briefing before our Court of Appeals in *Range* involving food stamp fraud. Nothing in *Bruen*, a successful facial challenge to a state licensing regime decided months before Mr. Speaks's plea hearing and sentencing, suggested to Attorney Jarmon his client had a meritorious defense to his section 922(g)(1) charge. In fact, the Supreme Court's jurisprudence suggested exactly the opposite. The only time the Supreme Court alluded to section 922(g)(1) was to signal their understanding the *Bruen* decision does not disturb the constitutionality of the statute.[148]

Mr. Speaks cannot show his plea counsel was ineffective for failing to advise him of a meritless defense.

### D.  We agree with counsel as to no need for an evidentiary hearing.

Congress in section 2255(b) requires us to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[149] The record conclusively demonstrates Mr. Speaks is not entitled to relief under § 2255. We find no need for an evidentiary hearing.

We asked counsel of a need to resolve fact disputes or consider evidence to decide Mr. Speaks's claims. Both counsel agreed there is no need. The existing record conclusively shows he is not entitled to relief. We decline to hold an evidentiary hearing.

### E.  We deny a certificate of appealability.

An appeal may not be taken to our Court of Appeals from a "final order in a proceeding under section 2255" unless we issue a certificate of appealability.[150] A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[151] "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[152] We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our conclusion Mr. Speaks's constitutional claims are not supported by the record.

## III.    Conclusion

We deny Mr. Speaks's habeas petition. Nothing in *Bruen* or *Range* or in the Nation's historical treatment of firearm possession suggests Philadelphians convicted of felonies for gun offenses with a fear of being harmed by living in a perceived dangerous city absent a specific imminent threat have a lawful purpose for bearing arms. Mr. Speaks pleaded guilty to one count of illegally possessing a firearm under section 922(g). He cannot now argue some form of generalized self-defense and dispute the factual basis for his plea on habeas. He also cannot show our Nation has some form of historical recognition persons convicted of gun crimes can walk around the streets with stolen guns because they fear living in the city with some generalized fear of harm.

We agree with all counsel no evidentiary hearing is required because the record conclusively shows he is not entitled to relief. There is also no basis to issue a certificate of appealability because Mr. Speaks failed to make a substantial showing of the denial of a constitutional right.

---

[1] ECF No. 49 at 2; *see also,* David Chang & Dan Stamm, *College-Bound Student Dies as Shooters Open Fire Outside of Corner Store*, NBC10 Philadelphia (Dec. 3, 2018), https://www.nbcphiladelphia.com/news/local/gunman-kill-injury-frankford-philadelphia/207679/.

The United States and Mr. Speaks dispute the circumstances surrounding the shooting. Mr. Speaks alleges he does not know who shot at them or their reason for doing so. ECF No. 40 at 22. The United States asserts the shooting occurred as part of ongoing warfare between two rival gangs. *Id.* at 32; ECF No. 60 at 64–65.

[2] ECF No. 40 at 22.

[3] 18 Pa. Cons. Stat. § 6106.

[4] *Id.* § 6108.

[5] ECF No. 49-1 at 8.

[6] *Id.* at 9.

[7] *Id.*

[8] 18 U.S.C. § 922(g)(1).

[9] Presentence Investigation Report ¶ 11 (Nov. 7, 2022).

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 12.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* ¶ 13.

[18] ECF No. 1. The grand jury charged him on May 18, 2022.

[19] ECF No. 10.

[20] ECF No. 15.

[21] *Id.* ¶ 14.

[22] *Id.* ¶ 14(b)(iv).

[23] *Id.* ¶ 17.

[24] ECF No. 38 at 8.

[25] *Id.* at 19–20.

[26] *Id.* at 12–13.

[27] *Id.* at 13–17.

[28] ECF No. 24.

[29] ECF No. 40 at 21–26.

[30] *Id.* at 24.

[31] *Id.* at 25.

[32] *Id.*

[33] *Id.* at 27–28; ECF No. 23.

[34] ECF No. 25.

[35] ECF No. 28 at 5.

[36] 139 S. Ct. 738 (2019).

[37] ECF No. 34.

[38] ECF No. 37.

[39] ECF No. 42.

---

[40] ECF Nos. 43, 45.

[41] ECF No. 49.

[42] ECF Nos. 49, 49-1.

[43] ECF Nos. 50, 51, 52, 53.

[44] ECF No. 51 ¶¶ 1–2.

[45] *Id.* ¶ 3.

[46] ECF No. 54.

[47] ECF No. 58.

[48] ECF No. 60 at 47–48 (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)).

[49] *Id.* at 51–52.

[50] *Id.* at 52.

[51] *Id.* at 62–63.

[52] *Id.* at 63.

[53] ECF No. 59.

[54] ECF Nos. 62, 63.

[55] 28 U.S.C. § 2255(a).

[56] *Id.* § 2255(b).

[57] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)) (cleaned up).

[58] *Hodge v. United States*, 554 F.3d 372, 378–79 (3d Cir. 2009).

[59] *Id.* at 379.

[60] 597 U.S. 1 (2022); 69 F.4th 96 (3d Cir. 2022).

[61] *United States v. Miller*, No. 23-135, 2024 WL 69140, at *5 (E.D. Pa. Jan. 5, 2024) (emphasis in original).

---

[62] ECF No. 28 at 5.

[63] *Rahimi,* 61 F.4th 443 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023); *Range,* 69 F.4th 96 (3d Cir. 2023), *petition for cert. filed*, No. 23-374 (Oct. 5, 2023). Our Court of Appeals is largely deferring resolving appeals on similar issues awaiting guidance in *Rahimi* as then applied to its review in *Range. See United States v. Benson,* No. 23-3249, ECF No. 10 (3d Cir. Jan. 26, 2024); *United States v. Cotton*, No. 23-3024, ECF No. 22 (3d Cir. March 8, 2024); *United States v. Spry*, No. 23-2884, ECF No. 25 (3d Cir. March 6, 2024); *United States v. Parker*, No. 23-2823, ECF No. 19 (3d Cir. Feb. 7, 2024); *United States v. Harper*, No. 23-2604, ECF No. 50 (3d Cir. March 12, 2024); *United States v. Law*, No. 23-2540, ECF No. 23 (3d Cir. Dec. 19, 2023); *United States v. Quailes*, No. 23-2533, ECF No. 56 (3d Cir. March 12, 2024); *United States v. Brinson*, No. 23-2075, ECF No. 34 (3d Cir. Dec. 22, 2023); *United States v. Goodnight*, No. 23-1882, ECF No. 31 (Dec. 27, 2023); *United States v. Lowry*, No. 23-1516, ECF No. 29 (3d Cir. Nov. 30, 2023); *United States v. Nixon*, No. 23-1942, ECF No. 34 (3d Cir. Feb. 2, 2024); *United States v. Tyson*, No. 18-1427, ECF No. 47 (3d Cir. Jan 12, 2024); *United States v. Bernard*, No. 23-1347, ECF No. 20 (3d Cir. Aug. 8, 2023); *United States v. Alexander*, No. 23-1371, ECF No. 19 (3d Cir. July 26, 2023); *United States v. Wellman*, No. 22-3328, ECF No. 18 (3d Cir. Feb. 5, 2024); *United States v. Stewart*, No. 22-1721, ECF No. 40 (3d Cir. Sept. 18, 2023); *United States v. Harris*, No. 21-3031, ECF No. 78 (3d Cir. Dec. 4, 2023); *United States v. DeShields*, No. 22-1725, ECF No. 28 (3d Cir. Jan. 3, 2024); *United States v. Brown*, No. 23-1964, ECF No. 12 (3d Cir. Nov. 29, 2023).

We appreciate the apt observations by our colleagues Chief Judge Connolly and Judge Noreika,"[g]iven the numerous opinions of district courts in this Circuit that have addressed [the constitutionality of § 922(g)(1)] in the last year and the pending appeals of many of those decisions, ... there will be a controlling decision from the Third Circuit in the near future" and noting the Supreme Court's decision in *United States v. Rahimi* may provide additional guidance on the constitutionality of section 922(g)(1). *See United States v. Pritchett*, No. 22-48, 2024 WL 1021082, at *2 (D. Del. Mar. 8, 2024) (quoting *United States v. Perez*, No. 22-55, 2024 WL 579115, at *1 (D. Del. Feb. 13, 2024)).

But we are today facing different and seemingly more direct issues than presented in *Rahimi* and *Range.* We asked Mr. Speaks's counsel if he wanted us to defer on ruling while awaiting this guidance even though today's issues are not squarely raised in *Rahimi* or *Range.* Mr. Speaks's counsel asked us to rule. ECF No. 60 at 48–49.

[64] *Bruen*, 597 U.S. at 17; *Range*, 69 F.4th at 101.

[65] U.S. CONST. amend. II.

[66] 554 U.S. 570 (2008).

[67] *Id.* at 599, 630.

[68] *McDonald v. Chicago*, 561 U.S. 742, 750 (2010).

[69] *Heller*, 554 U.S. at 595, 626.

[70] *Id.* at 626; *McDonald*, 561 U.S. at 786.

[71] *Bruen*, 597 U.S. at 18–19.

[72] *Id.* at 1.

[73] *Id.*

[74] *Id.* at 24.

[75] *Id.* at 31–32.

[76] *Id.* at 24.

[77] *Id.* at 29.

[78] *Id.* at 26.

[79] *Range*, 69 F.4th at 103 (quoting *Bruen*, 597 U.S. at 28–29).

[80] *Id.* at 98–99.

[81] *Id.*

[82] *Id.* at 101–03.

[83] *Id.* at 101.

[84] *Id.* at 102 (citing *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019)).

[85] *Id.* at 103 (citing *Heller*, 554 U.S. at 582).

[86] *Id.*

[87] *Id.* at 103–06.

[88] *Id.* at 106.

[89] *Id.* at 109 (Ambro., J., concurring).

[90] *Id.* at 109–110.

[91] *Bruen*, 597 U.S. at 24.

[92] ECF No. 34 at 16 ("Under *Range*, the defendant is one of 'the people' protected by the Second Amendment.").

[93] *United States v. Cotton*, No. 22-471, 2023 WL 6465836, at *3 (E.D. Pa. Oct. 4, 2023) (citing *Range*, 69 F.4th at 103)).

[94] ECF No. 62 at 4.

[95] *Bruen*, 597 U.S. at 24; *see also, United States v. Johnson*, No. 23-77, 2023 WL 6321767, at *2 (E.D. Pa. Sept. 27, 2023) (finding no need to address whether the Second Amendment covers the defendant's conduct under the first prong of the *Bruen* test because the United States met its burden under the second prong to show section 922(g)(1) as applied to defendant is "consistent with the Nation's historical tradition of firearm regulation"); *United States v. Ortiz*, No. 23-506, 2024 WL 493423, at *4 (E.D. Pa. Feb. 8, 2024) (same); *United States v. Boone*, No. 22-233, 2024 WL 965146, at *5 (D.N.J. Mar. 6, 2024) (same); *United States v. Miller*, No. 23-135, 2024 WL 69140, at *3 (E.D. Pa. Jan. 5, 2024) (same); *United States v. Rooks*, No. 21-038, 2023 WL 8237257, at *5 (E.D. Pa. Nov. 28, 2023) (same).

[96] *Carter v. King*, No. 18-11495, 2023 WL 4372675, at *5 (E.D. Mich. July 6, 2023).

[97] ECF No. 38 at 13–17.

[98] *Id.* at 12–13.

[99] *Id.* at 8.

[100] *Id.* at 17, 22.

[101] *Travillion*, 759 F.3d at 288.

[102] ECF No. 34 at 20.

[103] *Id.* at 21–24.

[104] *See, e.g., United States v. Jenkins*, No. 23-088, 2023 WL 6534200 (E.D. Pa. Oct. 6, 2023) (rejecting argument section 922(g)(1) is unconstitutional as applied to defendant and on its face); *United States v. Hedgepeth*, No. 22-377, 2023 WL 7167138 (E.D. Pa. Oct. 31, 2023) (same); *United States v. Blackshear*, No. 23-159, 2023 WL 5985284 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Wright*, No. 23-336, 2023 WL 8237250 (E.D. Pa. Nov. 27, 2023) (same); *United States v. Cotton*, 2023 WL 6465836 (E.D. Pa. Oct. 4, 2023) (same); *United States v. Sharpe*, No. 23-368, 2023 WL 8553446 (E.D. Pa. Dec. 11, 2023) (same); *United States v. Williams*, No. 23-284, 2024 WL 69141 (E.D. Pa. Jan. 5, 2024) (same); *United States v. Santiago*, No. 23-00148, 2023 WL 7167859, at *1 (E.D. Pa. Oct. 31, 2023) (same).

[105] *United States v. Allen*, No. 22-456, 2023 WL 8701295, at *1, *3–*5 (E.D. Pa. Dec. 15, 2023).

---

[106] *Id.* at *4.

[107] *Id.* (citing *Range*, 69 F.4th at 103).

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.* at *5.

[112] ECF No. 62 at 1.

[113] *Id.* at 2.

[114] 18 PA. CONS. STAT. §§ 6106 (entitled "Firearms not to be carried without a license") and 6108 (entitled "Carrying firearms on public streets or public property in Philadelphia.").

[115] 18 Pa. Cons. Stat. § 6106.

[116] *Id.* § 6108.

[117] *See, e.g., United States v. Regis*, No. 22-401, 2024 WL 83497, at *2 (E.D. Pa. Jan. 8, 2024) (finding defendant is not like Mr. Range because his prior convictions for illegal gun possession show he poses a danger to the public); *Cotton*, 2023 WL 6465836, at *4 ("Mr. Cotton was previously convicted of possessing a firearm by a person not to possess a gun," which "demonstrates, at the very least, that he has a history of disobeying firearm regulations specifically designed to protect public safety."); *Johnson*, 2023 WL 6321767, at *3 (reasoning defendant's prior convictions for unlawfully carrying firearms and receiving stolen property under sections 6106, 6108, 3925 indicate, unlike Mr. Range, "he presents a potential danger to society and cannot be trusted to obey firearm regulations"); *Wright*, 2023 WL 8237250, at *6 (finding defendant's prior convictions for unlawfully possessing guns and drug trafficking "differs substantially from Range," because "[u]nlike Mr. Range's non-violent fraud offense, Mr. Wright's prior convictions fall within the sweep of appropriate historical gun regulation analogues."); *United States v. Jones*, No. 23-477, 2024 WL 1252342, at *3 (E.D. Pa. Mar. 22, 2024) ("Jones' prior convictions triggering § 922(g)(1)—six firearms offenses and one drug offense—demonstrate that, if armed, he poses a danger to society."); *United States v. McCants*, No. 22-310, 2023 WL 8436055, at *3 (E.D. Pa. Dec. 5, 2023) ("Mr. McCants, on the other hand, has multiple previous convictions involving violent conduct and unlawful possession of firearms—he is not at all like Mr. Range."); *Kansky v. Luzerne Cnty.*, No. 20-42, 2023 WL 7221355, at *9 (M.D. Pa. Nov. 2, 2023) ("Because the right to publicly carry a concealed firearm is not protected by the Second Amendment, Plaintiff has failed to state a Second Amendment as-applied claim.").

[118] *Johnson*, 2023 WL 6321767, at *1.

---

[119] *Id.*

[120] *Id.* at *2–*3.

[121] *Id.*

[122] *Id.* at *3 (citing *Bruen*, 597 U.S. at 57).

[123] *Id.*

[124] *Range*, 69 F.4th at 103 (quoting *Bruen*, 597 U.S. at 30).

[125] 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441.

[126] *Heller*, 554 U.S. at 592–93 ("the Stuart Kings Charles II and James II succeeded in using select militias loyal to them to suppress political dissidents, in part by disarming their opponents…These experiences caused Englishmen to be extremely wary of concentrated military forces run by the state and to be jealous of their arms. They accordingly obtained an assurance from William and Mary, in the Declaration of Rights (which was codified as the English Bill of Rights), that Protestants would never be disarmed."); *Bruen*, 597 U.S. at 42–44 (explaining Parliament responded to their predecessors' disarming of political opponents by writing the English Bill of Rights).

[127] ECF No. 60 at 47–48.

[128] ECF No. 49 at 12.

[129] *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[130] *See Blackshear*, 2023 WL 5985284, at *3 ("Blackshear cannot show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances."); *United States v. Canales*, No. 21-226, 2023 WL 8092078, at *8 (E.D. Pa. Nov. 20, 2023) ("And since Canales cannot show that § 922(g)(1) is unconstitutional even as applied to him, he has failed to demonstrate that there are no circumstances in which the statute will be constitutional. This forecloses any facial challenge.").

[131] ECF No. 60 at 62–63.

[132] *Regis*, 2024 WL 83497, at *1.

[133] *Heller*, 554 U.S. at 626–27 & n. 6.

[134] *Pritchett*, 2024 WL 1021082, at *2.

[135] ECF No. 49 at 12.

[136] *Blackshear*, 2023 WL 5985284, at *3 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

[137] *Id.*

[138] *Miller*, 2024 WL 69140, at *5.

[139] *Id.* (quoting *United States v. Ladson*, No. 23-161-1, 2023 WL 6810095, at *5 (E.D. Pa. Oct. 16, 2023)).

[140] *Id.* (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010)).

[141] *Id.*

[142] Mr. Speaks also argues plea counsel was ineffective because he did not pursue the plea without a written plea agreement.

[143] *United States v. Kauffman*, 109 F.3d 186, 190–91 (3d Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984)).

[144] *Bell v. Cone*, 535 U.S. 685, 702 (2002).

[145] *Strickland*, 466 U.S. at 694.

[146] *Id.*

[147] *Kenney v. Tice*, No. 22-00366, 2023 WL 9184998, at *14 (E.D. Pa. Dec. 19, 2023); *see also, Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("Moreover, counsel cannot be deemed ineffective for failing to raise a meritless claim."); *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (ineffective assistance of counsel claim was meritless because the underlying claim was meritless); *Boyd v. McGinley*, No. 20-02983, 2021 WL 4976038, at *5 (E.D. Pa. Jan. 8, 2021), *report and recommendation adopted*, No. 20-2983, 2021 WL 4975270 (E.D. Pa. Oct. 26, 2021) ("Because I am bound by the Superior Court's determination that Mr. Boyd's claim is meritless, his ineffective assistance of counsel claim must fail because direct appeal counsel could not have been ineffective for failing to raise a meritless argument.").

[148] *See, e.g., Bruen*, 597 U.S. at 72 (Alito, J., concurring) (the decision does not "disturb[ ] anything that [the Court] said in *Heller* ... about restrictions that may be imposed on the possession of or carrying of guns"); *see id.* at 80–81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("the Second Amendment allows a 'variety' of gun regulations," and *Bruen* does not "cast doubt on longstanding prohibitions on the possession of firearms by felons"); *id.* at 129 (Breyer, J., dissenting, joined by Sotomayor, and Kagan, JJ.) ("Like Justice KAVANAUGH, I understand the Court's opinion today to cast no doubt on th[e] aspect of *Heller's* holding" addressing presumptively lawful firearm restrictions, including the prohibition of the possession of a firearm by a felon).

[149] 28 U.S.C. § 2255(b).

[150] *Id.* § 2253(c)(1)(B).

[151] *Id.* § 2253(c)(2).

[152] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).